IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JASON TRISLER,

    Plaintiff,

v.                               Civil Action No. 3:11CV343–HEH

PRISON HEALTH
SERVICES, INC., *et al.*,

    Defendants.

## MEMORANDUM OPINION
(Granting Elam's and Jenkins's Motion for Summary Judgment)

Jason Trisler, a former Virginia prisoner proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983.[1] Trisler alleges that during his incarceration at Haynesville Correctional Center ("Haynesville") the defendants[2] failed to ensure that he receive adequate medical care for his abdominal and umbilical hernias. The matter is before the Court on the Motion for Summary Judgment filed by Defendants Elam and Jenkins. Defendants Elam and Jenkins provided Trisler with the appropriate

---

[1] The statute provides, in pertinent part:

    Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] Trisler named a dozen individuals and entities as defendants in his Complaint.

*Roseboro*[3] notice for their Motion for Summary Judgment. (ECF No. 34.) Nevertheless, Trisler failed to file a response. The matter is ripe for disposition.

## I. Summary of Claims against Defendants Jenkins and Elam

Trisler's Complaint spans 138 paragraphs. Only a few of his factual allegations pertain to Defendants Jenkins and Elam. Specifically, Trisler's claims against Defendant Jenkins flow from her alleged failure to provide appropriate care for his abdominal hernia on December 14, 2008. (Compl. ¶¶ 46–49.) Trisler's claims against Defendant Elam arise from her alleged failure, on April 28, 2009, to provide appropriate medical care for Trisler's surgical incision. (*Id.* ¶¶ 73–79.) Trisler's claims against Defendants Jenkins and Elam are best summarized as follows:

| | |
|---|---|
| Claim 1 | Defendant Jenkins violated Trisler's rights under the Eighth Amendment[4] by failing to provide appropriate medical care for Trisler's abdominal hernia on December 14, 2008. (*Id.* ¶ 134.) |
| Claim 2 | Defendant Elam violated Trisler's rights under the Eighth Amendment when she failed to provide appropriate medical attention for his surgical incision on April 28, 2009.[5] (*Id.* ¶ 136.) |
| Claim 3 | Defendants Jenkins and Elam violated Trisler's right to be free from cruel and unusual punishment under the Virginia Constitution[6] by their failure to provide appropriate medical care on the dates specified in Claims 1 and 2. (*Id.* ¶¶ 134, 136.) |

---

[3] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[5] On April 27, 2008, Trisler underwent surgery for repair of an umbilical hernia.

[6] "That excessive bail ought not to be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted . . . ." Va. Const. Art. 1, § 9.

2

Claim 4 "The defendants' action or inaction ... constituted the state law tort of [(a)] civil conspiracy, [(b)] gross negligence, [(c)] breach of contract, and [(d)] intentional infliction of emotional distress." (*Id.* ¶ 137.) Additionally,

> by enacting and implementing the Utilization Management provision of OP 720.2 which instructs an offender's treating physician that DO NOT write in the medical record Request denied by UM, Please use terms such as alternative treatment recommended, [(e)] the defendants['] actions constituted the state tort of actual or constructive fraud.

(*Id.* ¶ 138 (internal quotation marks omitted).)

The Court notes Defendants Elam and Jenkins failed to address Claim 3 in their Motion for Summary Judgment. Under 28 U.S.C. § 1915(e)(2), however, this Court may summarily dismiss claims as legally frivolous where the relevant statute of limitations bars the claim. *See Lawrence v. Cooper*, 398 F. App'x 884, 887 (4th Cir. 2010) (citing *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655–56 (4th Cir. 2006); *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 956 (4th Cir. 1995)). Such circumstances exist here.

The pertinent statute provides:

> No person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted. Such action shall be brought by or on behalf of such person within one year after cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later.

Va. Code Ann. § 8.01–243.2 (West 2012). Trisler filed his Complaint on November 30, 2010.[7] (Compl. ¶ 27.) Trisler's Virginia constitutional claims against Defendants Elam

---

[7] This is the date Trisler executed his Complaint and presumably placed it in the prison mailing system. Thus, that date becomes the date this Court deems the Complaint filed. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

and Jenkins accrued, at the latest, on April 29, 2009, when Defendant Elam allegedly failed to provide appropriate medical care. Trisler failed to file his Complaint within one year of that date. Accordingly, Trisler will be directed to show good cause within fifteen (15) days of the date of entry hereof why Claim 3 should not be dismissed as barred by the relevant statute of limitations. Essentially, Trisler must demonstrate under a summary judgment standard that the statute of limitations fails to bar Claim 3. *See Rutecki v. CSX Hotels, Inc.*, 290 F. App'x 537, 542 (4th Cir. 2008) (acknowledging a court's inherent authority to *sua sponte* grant summary judgment after providing notice to affected party that they must come forward with his or her evidence (citing *Hughes v. Bedsole*, 48 F.3d 1376, 1379 (4th Cir. 1995))). Thus, to the extent Trisler contends he filed the Complaint within six months of exhausting his administrative remedies, he must substantiate that fact with copies of the pertinent grievance material, an affidavit, or other available evidence that indicates the timeliness of Claim 3.[8] Failure to file an appropriate response will result in the dismissal of Claim 3. *See* Fed. R. Civ. P. 41(b).

## II. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the

---

[8] An affidavit is a sworn statement of facts made on personal knowledge, and affidavits may be submitted by Trisler or any other witnesses. There are two alternative ways to submit an affidavit to the Court, one of which must be followed. One way is for the person making the affidavit to sign the affidavit and swear to the truth before a notary public. The other way, which does not require a notary public, is for the person making the affidavit to sign the affidavit and certify that he or she signs under penalty of perjury and understands that he or she may be prosecuted if the facts he or she sets forth are untrue.

responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "'*scintilla* of evidence'" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).

Moreover, not all disputes of fact preclude summary judgment. Instead, "the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 248. With respect to materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* As to genuineness, the nonmoving party "must produce . . . evidence that creates a fair doubt; wholly speculative assertions will not suffice." *Bongam v. Action Toyota, Inc.*, 14 F. App'x 275, 280 (4th Cir. 2001) (citation omitted) (internal quotation marks

5

omitted). "A motion for summary judgment may not be defeated by evidence that is 'merely colorable' or 'is not sufficiently probative.'" *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1993) (quoting *Anderson*, 477 U.S. at 249–50). Thus, the nonmoving party cannot "'create a genuine dispute of fact through mere speculation.'" *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.3d 213, 214 (4th Cir. 1985)). Nor will mere "'metaphysical doubt as to the material facts'" create a genuine dispute. *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Accordingly, "[t]he nonmovant can show that a dispute is genuine only if it provides sufficient evidence so that a 'reasonable jury could return a verdict for the nonmoving party.'" *Wiggins v. DaVita Tidewater LLC*, 451 F. Supp. 2d 789, 796 (E.D. Va. 2006) (quoting *Anderson*, 477 U.S. at 248).

In support of their Motion for Summary Judgment, Defendants Elam and Jenkins submitted their respective affidavits (Mem. Supp. Mot. Summ. J. Ex. A ("Jenkins Aff."),[9] Ex. B ("Elam Aff.")) and copies of Trisler's pertinent medical records. Trisler's failure to respond to the Motion for Summary Judgment permits the Court to rely solely on the submissions of Elam and Jenkins in deciding the Motion for Summary Judgment. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's

---

[9] The affidavit Defendant Jenkins submitted with her Motion for Summary Judgment failed to bear a signature. On May 30, 2012, Defendant Jenkins submitted an executed affidavit. (ECF No. 32.)

6

opposition to summary judgment.'" (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992))).[10] Accordingly, the Court deems the facts set forth below established for purposes of the present Motion for Summary Judgment.

### III. Pertinent Undisputed Facts with Respect to Defendant Jenkins

In 2008, Defendant Jenkins worked as a licensed practical nurse at Haynesville. (Jenkins Aff. ¶¶ 1–2.) On Sunday, December 14, 2008, at 12:30,[11] Trisler appeared in the medical department and complained to Defendant Jenkins of pain in his abdomen related to a hernia. (*Id.* ¶ 2.) Trisler reported his last bowel movement had occurred two days ago. (*Id.*) Defendant Jenkins noted Trisler's history of a hernia and that on December 5, 2008, the physician had requested for Trisler to have hernia surgery. (*Id.*) Nothing in

---

[10] The Court notes that Trisler swore to the truth of the contents of his Complaint. (Compl. ¶ 27.) Nevertheless, the facts offered by an affidavit or a sworn statement must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). In this regard, the statement in the affidavit or sworn declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Moreover, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted).

Trisler's account of his interactions with Defendant Jenkins and his subsequent medical care largely squares with Defendant Jenkins's statements, except in those instances where Trisler's account runs afoul of the above-referenced principles for proper summary judgment evidence. For example, Trisler fails to demonstrate he "is competent to testify," Fed. R. Civ. P. 56(c)(4), as to Defendant Jenkins's state of mind (*see, e.g.*, Compl. ¶ 48) or opine what constitutes "obvious symptoms of the incarceration or strangulation of the hernia." (*Id.* ¶ 47); *see Pearson v. Ramos*, 237 F. 3d 881, 886 (7th Cir. 2001) (citing cases for the proposition that a prisoner "wholly lacking in medical knowledge" is incompetent to provide expert medical evidence). Nevertheless, no need exists to catalog the entirety of inadmissible evidence previously submitted by Trisler because he fails to direct the Court to any evidence, such as his Complaint, that he wishes the Court to consider in opposition to the Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c)(3) (explaining that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment).

[11] The record fails to indicate whether this visit occurred in the early morning or the early afternoon.

7

Trisler's chart "indicat[ed] that he had reported to medical with complaints of constipation or abdominal pain immediately preceding his visit with" Defendant Jenkins on December 14, 2008. (*Id.*)

Defendant Jenkins took Trisler's vital signs which registered as normal. (*Id.*) Defendant Jenkins "believed that [Trisler] had constipation and treated him in accordance with the nursing protocols. [She] gave him mineral oil, 30 cc, Milk of Magnesia 440 mg, Bisacodyl which is a laxative, and Motrin for pain." (*Id.*) Defendant Jenkins "advised Trisler that if he had any continuing problems to report back to medical the following day when the doctor would be available to assess him." (*Id.*)[12]

On December 15, 2008, Trisler returned to the medical department. (*Id.* ¶ 3.) After the physician examined Trisler, the physician admitted Trisler to the infirmary and prescribed Magnesium Citrate, a laxative. (*Id.*) After three hours, the physician noted that Trisler had nausea and vomiting, but had not had a bowel movement. (*Id.*) At that time, the physician sent Trisler "to the hospital to rule out an incarcerated hernia/acute abdomen." (*Id.*)[13]

Defendant Jenkins swears, "Trisler's clinical presentation did not indicate to [her] that [Trisler] had an emergency condition that required emergency medical treatment." (*Id.* ¶ 4.)[14] When Defendant Jenkins saw Trisler "on December 14, 2008, his vital signs

---

[12] No physician worked at Haynesville on Sunday. (Jenkins Aff. ¶ 2.)

[13] In his Complaint, Trisler states that, at the hospital, he underwent emergency surgery to repair his hernia. (Compl. ¶ 56.)

[14] The Court notes that in his Complaint, Trisler swears that when Defendant Jenkins examined him his hernia was visible "by virtue of the enlarged protrusion in Trisler's abdomen."

8

were normal and his symptoms were consistent with constipation, a non-emergent condition, and one which [she was] authorized by the physician to treat in the manner that [she] did." (*Id.*)

### V. Pertinent Undisputed Facts with Respect to Defendant Elam

Trisler predicates his claims against Defendant Elam on the possibility that she examined him on April 28, 2009 and then declined to change his bandage. Defendant Elam, however, "did not examine or treat Trisler on April 28, 2009. The notations in [Trisler's] medical chart on that day were made by staff other than [Defendant Elam]." (Elam Aff. ¶ 4.)[15] Thus, Trisler fails to demonstrate that Defendant Elam bore any responsibility for Trisler's medical care.

---

(Compl. ¶ 47.) No dispute exists as to whether Trisler had a hernia. And, as previously noted, Trisler fails to direct the Court to competent medical evidence reflecting such an enlarged protrusion indicated Trisler's hernia had evolved to an emergency condition. *See Pearson v. Ramos*, 237 F. 3d 881, 886 (7th Cir. 2001).

[15] On April 27, 2009, Trisler underwent surgery for the repair of an umbilical hernia. (Compl. ¶ 72.) On April 28, 2009, Trisler went to the Haynesville Medical Department "to report that he was experiencing excessive drainage of blood in the surgical incision site." (*Id.* ¶ 73.) Trisler avers that he "was examined on that occasion in the Haynesville medical department by Nurse Elam or Nurse Jane Doe who noted dried blood on the dressing covering the incision site or surgical wound." (*Id.* ¶ 74.) "Nurse Elam or Nurse Jane Doe refused to change the dressing or provide any medical care to stop the excessive drainage or refer Trisler to a physician." (*Id.* ¶ 75.) Trisler later contracted an infection which required further treatment at the hospital. (*Id.* ¶ 82.) Even if the Court considered the above statements, Trisler's guess as to the identity of the nurse who examined him on April 28, 2009 is too ambiguous to generate a genuine dispute of fact or to allow a reasonable jury to find in his favor. *See M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1993) ("A motion for summary judgment may not be defeated by evidence that is 'merely colorable' or 'is not sufficiently probative.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986))).

9

## VI. ANALYIS

### A. Eighth Amendment Claims

In order to survive summary judgment, Trisler must demonstrate that Defendants Jenkins and Elam acted with deliberate indifference to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his or her person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate."

*Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837; *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to demonstrate that "the official in question subjectively recognized a substantial risk of harm" and "that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

### 1. Defendant Jenkins

In Claim One, Trisler contends Defendant Jenkins failed to provide appropriate medical care for his abdominal hernia when she examined him on December 14, 2008. At that time, Defendant Jenkins knew Trisler had a hernia that prison physicians planned to surgically repair on a non-emergency basis.[16] The record, however, fails to indicate that Defendant Jenkins subjectively perceived that Trisler's discomfort resulted from a

---

[16] The parties failed to provide expert evidence with respect to the risks associated with Trisler's hernias. *See Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008) (observing that "a delay with respect to hernia surgery does not necessarily constitute deliberate indifference absent some resultant harm or a worsened condition;" discussing situations involving significant delays). The United States Court of Appeals for the Seventh Circuit observed:

> [T]here are three types of hernia situations: (1) a hernia that is strangulated, which is a medical emergency mandating surgery; (2) a hernia that is reducible yet so painful or debilitating that surgery is required; and (3) a hernia that is reducible and, given the dangers and risks inherent in any operation, can be treated through non-surgical means.

*Johnson v. Doughty*, 433 F.3d 1001, 1014 (7th Cir. 2006).

deterioration of his abdominal hernia, rather than gas and constipation.[17] *See Quinones*, 145 F.3d at 168–69 (concluding physician's misdiagnosis failed to support a claim of deliberate indifference); *Webb*, 281 F. App'x at 166–67. Defendant Jenkins's contemporaneous statements to Trisler reflecting her diagnosis and prescription of medication to treat gas and constipation provide direct evidence of her subjective state of mind, reflecting that she failed to perceive a deterioration of Trisler's hernia as the cause for his discomfort. *See Mata v. Saiz*, 427 F.3d 745, 760 (10th Cir. 2005).

Trisler fails to adduce evidence from which a reasonable trier of fact could conclude that Defendant Jenkins's actions amounted to deliberate indifference. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) ("To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986))). Although it is unfortunate that Defendant Jenkins misdiagnosed the cause of Trisler's pain, such an error fails to support an Eighth Amendment claim. *See Quinones*, 145 F.3d at 168–69 ("Without evidence that the doctors 'bridged the gap' between the symptoms and the tumor itself, Johnson cannot survive summary judgment."); *see also Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he [or she] should have perceived but did not, while no

---

[17] The fact that the physician, who had significantly more medical training than Defendant Jenkins, also initially diagnosed Trisler as suffering from gas and constipation the following day, supports the reasonableness of Defendant Jenkins's initial diagnosis.

cause for commendation, cannot under our cases be condemned as the infliction of punishment."). Accordingly, Claim One will be dismissed.

### 2. Defendant Elam

Trisler fails to direct the Court to any evidence that demonstrates Defendant Elam's involvement with his medical care, much less any deliberate indifference on her part. Accordingly, Claim Two will be dismissed.

### B. Remaining State Law Claims

#### 1. Civil Conspiracy

"In Virginia, the elements of a common law civil conspiracy claim are (i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (citing *Glass v. Glass*, 321 S.E.2d 69, 74 (1984)). Trisler predicates his conspiracy claim upon the belief that all of the defendants reached an agreement to deny elective surgical procedures for inmates within the VDOC. Specifically, Trisler alleges,

> By implementation of the Utilization Management provision of OP 720.2 which, *upon information and belief,* states that "Elective surgical procedures for offenders will not be approved," all the named defendants deliberately and knowingly denied, and continue to deny, non-life threatening surgeries to Trisler and all offenders in the custody of the VDOC.

(Compl. ¶ 116 (emphasis added).) Trisler, however, fails to direct the Court to any admissible evidence to support his speculation that either Defendant Elam or Jenkins reached any such agreement. *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court

13

need consider only the cited materials" in deciding a motion for summary judgment).[18]
Accordingly, Claim 4(a) against Defendants Elam and Jenkins will be dismissed.

2. **Gross Negligence**

Defendants Elam and Jenkins argue the Court should grant "summary judgment on the gross negligence claim for the same reasons they are entitled to summary judgment with respect [to] the Eighth Amendment deliberate indifference claim." (Mem. Supp. Mot. Summ. J. 10 (citing *Whitley v. Commonwealth*, 538 S.E.2d 296, 299–300 (Va. 2000)). As reflected above, Trisler fails to demonstrate that Defendant Elam had any involvement in the provision of his medical care. Accordingly, Claim 4(b) will be dismissed against Defendant Elam.

In Virginia, "[a] claim of gross negligence, which involves the 'absence of slight diligence, or the want of even scant care,' will not lie if the defendant exercised some degree of care with regard to the plaintiff." *Whitley*, 538 S.E.2d at 300 (quoting *Colby v. Boyden*, 400 S.E.2d 184, 189 (Va. 1991)). Here, the record reflects that Defendant Jenkins exercised some degree of care with respect to Trisler. Defendant Jenkins did not simply ignore Trisler's complaints on December 14, 2008. Rather, she examined Trisler, took his vital signs, inquired into Trisler's medical history, and asked about his last bowel movement. (Jenkins Aff. ¶ 2.) Defendant Jenkins then provided medication to ease Trisler's discomfort and directed him to follow up the next day with the physician if his

---

[18] The statements in Trisler's Complaint, regarding the existence of a conspiracy (*see, e.g.*, Compl. ¶¶ 116–17), fail to reflect his personal knowledge regarding any such conspiracy. *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, at *2–3 & n.5 (E.D. Va. June 1, 2011) (treating sworn statements made upon information and belief as "'mere pleading allegations'" (quoting *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001))).

discomfort persisted. (*Id.*) Such care by Defendant Jenkins defeats Trisler's claim of gross negligence. *See Whitley*, 538 S.E.2d at 300; *see also Kuykendall v. Young Life*, 261 F. App'x 480, 490–91 (4th Cir. 2008) (affirming grant of summary judgment based upon defendant's safety precautions, observing "the standard for gross negligence is one of indifference, not inadequacy"). Accordingly, Claim 4(b) will be dismissed.

### 3. Breach of Contract

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004) (citing *Brown v. Harms*, 467 S.E.2d 805, 807 (Va. 1996); *Fried v. Smith*, 421 S.E.2d 437, 439 (Va. 1992); *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 379 S.E.2d 316, 317 (Va. 1989)). Trisler fails to demonstrate that Defendants Elam and Jenkins had any contractual obligation to him.[19] *See Miller v. Quarles*, 410 S.E. 2d 639, 641 (Va. 1991) (conceding no liability existed for breach of contract claim against defendant, who failed to personally contract with plaintiffs); *Velocity Micro Inc. v. JAZ Mktg., Inc.*, Nos. 3:11–cv–473, 3:12–cv–245, 2012 WL 3948018, at *11 (E.D. Va. Sept. 10, 2012) (dismissing claims where defendant was not a party to the contract). Accordingly, Claim 4(c) will be dismissed.

---

[19] Trisler contends that Prison Health Services, Inc., entered into a contract with the VDOC to provide medical care to inmates. (Compl. ¶ 6.)

### 4. Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress requires the plaintiff to establish: "1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 343 (Va. 2008) (citations omitted). Because Trisler fails to demonstrate Trisler's involvement with his medical or any improper conduct on her part, Claim 4(d) against her fails to survive summary judgment.

Although the record reflects Defendant Jenkins's involvement in providing medical care to Trisler, Trisler fails to demonstrate Defendant Jenkins acted recklessly or intentionally in failing to diagnose the emergent nature of his hernia and provide appropriate care. *See supra* Parts VI.A.2, VI.B.2. Furthermore, Trisler fails to establish that Defendant Jenkins acted in a sufficiently outrageous manner. *See Coppage v. Mann*, 906 F. Supp. 1025, 1049 (E.D. Va. 1995) (dismissing similar claim by inmate, explaining that "the staff may well have delayed in treating [the plaintiff] or misdiagnosed him, but they did provide him with some level of care"). Accordingly, Claim 4(d) will be dismissed.

### 5. Fraud

A party claiming actual fraud must prove by clear and convincing evidence: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 346–47

(Va. 1998) (quoting *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)). "Constructive fraud requires proof... 'that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of ... reliance upon the misrepresentation.'" *Id.* at 347 (quoting *Mortarino v. Consultant Eng'g Serv.*, 467 S.E.2d 778, 782 (Va. 1996)) (second omission in original).

Trisler charges all of the defendants with fraud or constructive fraud for "implementing the Utilization Management provision of OP 720.2 which instructs an offender's treating physician that DO NOT write in the medical record Request denied by UM, Please use terms such as alternative treatment recommended." (Compl. ¶ 138 (internal quotation marks omitted).) Trisler fails to demonstrate that either Defendant Elam or Jenkins had any involvement with the implementation of the OP 720.2 or made any false statements pursuant to that provision.[20] Accordingly, Claim 4(e) will be dismissed. The motion for summary judgment (ECF No. 29) will be granted.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
Date: Feb. 28, 2013
Richmond, Virginia
UNITED STATES DISTRICT JUDGE

---

[20] Indeed, Trisler fails to direct the Court to any evidence which reflects Defendants Elam or Jenkins knowingly and intentionally made any false statement of a material fact.

17