IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JASON TRISLER, )
)
    Plaintiff, )
)
v. ) Civil Action No. 3:11CV343–HEH
)
PRISON HEALTH )
SERVICES, INC., *et al.*, )
)
    Defendants. )

## MEMORANDUM OPINION
### (Granting Motion for Summary Judgment)

Jason Trisler, a former Virginia prisoner proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983.[1] Trisler alleges that during his incarceration at Haynesville Correctional Center ("Haynesville") the defendants[2] failed to ensure that he received adequate medical care for his abdominal and umbilical hernias. By Memorandum Opinions and Orders entered on March 1, 2013 and February 28, 2013, the Court dismissed the majority of Trisler's claims against the majority of the defendants. *Trisler v. Prison Health Servs., Inc.*, No. 3:11CV343–HEH, 2013 WL

---

[1] The statute provides, in pertinent part:

    Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] Trisler named a dozen individuals and entities as defendants in his Complaint.

870102, at *3 (E.D. Va. Mar. 1, 2013); *Trisler v. Prison Health Servs., Inc.*, No. 3:11CV343–HEH, 2013 WL 775376, at *5–8 (E.D. Va. Feb. 28, 2013).

The following claims remain:

Claim 1    In violation of the Eighth Amendment,[3] Defendants Jabe, Johnson, Mahon and Schilling (collectively "Correctional Defendants") and the Virginia Department of Corrections ("VDOC") acted with deliberate indifference to: (a) Trisler's need for surgery for his abdominal hernia; and, (b) the pain caused to Trisler by his hernia. (Comp. (ECF No. 1) ¶ 134.)

Claim 2    Prison Health Care, Inc. ("PHS") "has a custom, practice, and reputation of employing unqualified and unlicensed persons to provide health care to offenders." (*Id.* ¶ 42.) Johnson, Schilling, Jabe and the VDOC acted with deliberate indifference to Trisler's medical needs by entering into a contract with PHS to provide health care for inmates at Haynesville, including Trisler. (*Id.* ¶ 43.)[4]

Claim 3    The actions of the VDOC, Elam, Jenkins,[5] and the Correctional Defendants violated Trisler's rights under the Virginia Constitution. (*Id.* ¶ 134.)

Claim 4    "The defendants' action or inaction ... constituted the state law tort of [(a)] civil conspiracy, [(b)] gross negligence, [(c)] breach of contract, and [(d)] intentional infliction of emotional distress." (*Id.* ¶ 137.) Additionally, Trisler states the following: "By enacting and implementing the Utilization Management provision of OP

---

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[4] Trisler's Complaint spans 138 paragraphs. Trisler's claims for relief are set forth in paragraphs 134 through 138. Claim 2 set forth above is not listed in this section. The Court will address this claim because the Correctional Defendants deem Trisler to have raised such a claim. The Correctional Defendants refer to this claim as "Claim I." (Mem. Supp. Mot. Summ. J. (ECF No. 39) 4–5.) Nevertheless, the Court is neither obliged nor inclined to act as Trisler's advocate and construct additional statutory and constitutional claims that Trisler failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

[5] The Court previously dismissed all other claims against Defendants Elam and Jenkins. *See Trisler*, 2013 WL 775376, at *1–8.

2

720.2[,] which instructs an offender's treating physician that 'DO NOT write in the medical record Request denied by UM, Please use terms such as alternative treatment recommended, [(e)] the defendants['] actions constituted the state tort of actual or constructive fraud." (*Id.* ¶ 138 (internal quotation marks omitted).)

The VDOC is not a person within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989). Accordingly, Trisler's § 1983 claims against the VDOC, set forth in Claims 1 and 2, will be dismissed with prejudice. *See* 28 U.S.C. § 1915(e)(2) (permitting the courts to dismiss legally frivolous claims). Additionally, Trisler's release from confinement moots his demands for declaratory and injunctive relief. *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986))). Accordingly, Trisler's demands for declaratory and injunctive relief will be dismissed as moot.

The matter is before the Court on the Correctional Defendants' Motion for Summary Judgment. (ECF No. 38.) The Correctional Defendants provided Trisler with the appropriate *Roseboro*[6] notice. (ECF No. 40.) Trisler has not responded. The matter is ripe for disposition. For the reasons set forth below, the Court will grant the Correctional Defendants' Motion for Summary Judgment with respect to the federal constitutional claims set forth in Claims 1 and 2. In light of the preliminary dismissal of

---

[6] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

the federal claims, the Court will dismiss without prejudice the remaining supplementary state law claims.

## I. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is

literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the *onus* of proof is imposed.'" *Id.* (quoting *Munson*, 81 U.S. at 448).

In support of their Motion for Summary Judgment, the Correctional Defendants submitted the affidavits of Defendants Mahon and Schilling. (Mem. Supp. Mot. Summ. J. Attachs. 1–2 ("Mahon Aff." (ECF No. 39–1)) ("Schilling Aff." (ECF No. 39–2)).) Trisler's failure to respond to the Motion for Summary Judgment permits the Court to rely solely on the submissions of the Correctional Defendants in deciding the Motion for Summary Judgment. *See Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992))).[7] Accordingly, the Court

---

[7] The Court notes that Trisler swore to the truth of the contents of his Complaint. (Compl. at 27.) Nevertheless, the facts offered by an affidavit or a sworn statement must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). In this regard, the statement in the affidavit or sworn declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Moreover, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted).

Large portions of Trisler's Complaint run afoul of the above-referenced principles for proper summary judgment evidence. For example, Trisler fails to demonstrate he "is competent to testify," Fed. R. Civ. P. 56(c)(4), about Defendants Mahon's and Schilling's knowledge. (Compl. ¶ 84 ("Mahon at all times knew that the surgery needed to repair Trisler's hernia was being delayed or denied for financial reasons . . . ."; *Id.* ¶ 86 ("Schillings [sic] knew at all times that Trisler was being denied needed surgery for the hernia for financial reasons only.").) Nevertheless, no need exists to catalog the entirety of inadmissible evidence previously submitted by Trisler because he fails to direct the Court to any evidence, such as his Complaint, that he wishes the Court to consider in opposition to the Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c)(3) (explaining that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment).

deems the facts set forth below established for purposes of the present Motion for Summary Judgment.

## II. Summary of Pertinent Facts

Between 2007 and 2009, Trisler was incarcerated in Haynesville.[8] (Schilling Aff. ¶ 7; *see* Compl. ¶¶ 19, 81–82.) "The VDOC contracts with licensed doctors to provide comprehensive medical care and treatment to offenders. Medical judgment always rests with qualified medical personnel who are trained to make medical decisions . . . ." (Schilling Aff. ¶ 5.) "If an offender has a medical problem or concern, he may seek appropriate attention and care from the health care providers at his institution. The health care providers evaluate the offender's complaint and determine what treatment is necessary." (*Id.* ¶ 6.)

As part of the VDOC policies regarding medical care, the VDOC employs a Utilization Manager.[9] (*Id.* ¶ 8.)[10]

> The UM is to review any referral for any medical services beyond the services available in a VDOC facility. In order to have a request reviewed by the UM, the requesting physician will document their requested procedure or consultation in the offender's Health Record progress notes as

---

[8] During that period, Defendant Johnson was the Director of the VDOC. (Compl. ¶ 16.) Defendant Schilling was and is the Health Services Director for the VDOC. (Schilling Aff. ¶ 1.) Defendant Mahon was and is the Warden of Haynesville. (Mahon Aff. ¶ 1.) Defendant Jabe was the Deputy Director of Operations for the VDOC. (Compl. ¶ 15.)

[9] "The Utilization Manager (UM) is the person responsible for reviewing, approving, and suggesting alternative plans to consultation services. The UM is responsible for training users and maintaining the UM process." (Schilling Aff. ¶ 8 n.2.)

[10] In his Complaint, Trisler alleged that Defendants Jabe, Schilling, and Johnson employed the Utilization Manager as a means for implementing and furthering the "unconstitutional policy or practice of preventing Trisler and all offenders in the custody of the VDOC from having necessary non-emergency surgeries . . . ." (Compl. ¶ 118.)

an order including the following information: procedure, treatment, or modality requested; medical history; pertinent physical or ancillary findings; and past and present treatments and response including medications. After review of the requested medical procedure or consultation the UM will take one of the following actions: recommend and authorize a specific diagnostic or therapeutic treatment modality; suggest an alternative treatment plan; or request additional information. If the treating physician does not agree with the UM's response an appeal may be made [to] the VDOC Chief Physician. The policy does state the following, "DO NOT write in the Health Record 'Request denied by UM,' please use terms such as 'alternative treatment recommended.'" This is only to provide more detailed information for the offender's medical records. This is not a way to omit information from an offender's record or falsify documents. The treating physician is encouraged to explain to the offender why the consultation or procedure is NOT medically necessary and document it accordingly.

(*Id.* (punctuation corrected).)

"Haynesville has medical staff and facilities to provide diagnostic treatment and consultant services for all offenders. Department operating procedures and policies have been promulgated to implement these services." (Mahon Aff. ¶ 5.) On March 22, 2007, Trisler first reported to the Haynesville medical department with complaints of abdominal pain. (Compl. ¶ 19.) On June 2, 2008, Dr. Ajumobi informed Trisler that "he would file a QMC Consultation Request to seek approval for the surgical repair of [Trisler's] hernia." (*Id.* ¶ 38.) Dr. Ajumobi, "did not file the QMC Consultation Request needed for approval of the [surgery]." (*Id.* ¶ 65.) Sometime thereafter, Dr. Ajumobi stopped working at Haynesville. (*Id.* ¶ 41.)

On December 12, 2008, upon learning that no QMC Consultation Request had been filed, Dr. Johnson filed a request seeking approval for Trisler's surgery. (*Id.* ¶ 68.) On December 15, 2008, Trisler received emergency surgery for his hernia, which had

become strangulated. (*Id.* ¶¶ 50–57.) On that same day, "the QMC request filed by Dr. Johnson [was denied], stating as the reason for the denial that 'VADOC policy is to observe reducible and ventral and inguinal hernias rather than operate on them.'" (*Id.* ¶ 69.)

Defendant Mahon subsequently acknowledged Dr. Ajumobi's oversight. (*Id.* ¶ 68.)

> On February 12, 2009, Trisler filed a Regular Grievance Form in which he complained about Dr. Ajumobi's refusal to file the QMC Consultation Request. In ruling that Trisler's grievance was founded, defendant Mahon stated: "An investigation into your grievance indicates that you are correct. The doctor inadvertently did not file a QMC request for your hernia repair on June 2, 2008. However, when Medical was made aware of this, Dr. Johnson requested QMC for approval for your hernia repair on December 12, 2008."

(*Id.*)

### III. ANALYSIS

#### A. Eighth Amendment Claims

In order to survive summary judgment, Trisler must demonstrate that a defendant acted with deliberate indifference to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant acted with deliberate indifference. *See Farmer v.*

*Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837; *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to demonstrate that "the official in question subjectively recognized a substantial risk of harm" and "that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

Furthermore, absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3d Cir. 1970)).

Defendants Mahon and Schilling acknowledge that the VDOC has a policy "to deny purely elective medical procedures." (Mem. Supp. Summ. J. 8 (citing Schilling Aff. ¶ 9)). Whether an individual requires surgery for a hernia is a matter of medical judgment. *See Webb v. Hamidullah,* 281 F. App'x 159, 165–66 (4th Cir. 2008) (dismissing on summary judgment inmate's claim that physician acted with deliberate indifference by classifying inmate's need for hernia surgery as elective). Defendants Mahon and Schilling assert that they are not medical doctors and rely upon medical professionals to diagnose offenders and provide the proper treatment. *See Iko,* 535 F.3d at 242 (holding that once an inmate has been placed into the care of appropriate medical personnel, "'a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands'" (quoting *Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004))).

Trisler faces a fairly onerous task in demonstrating deliberate indifference in the present circumstances because reliance upon the expertise of prison doctors in treating inmates is generally appropriate for supervisory officials such as Schilling and Mahon. *See Miltier,* 896 F.2d at 854–55; *Meloy v. Bachmeier,* 302 F.3d 845, 849 (8th Cir. 2002). To overcome such reliance, the inmate must introduce evidence

10

demonstrating that the supervisory official knew that the care provided by medical personnel was so obviously incompetent that it posed a substantial risk of harm to the inmate's health. *See Miltier*, 896 F.2d at 854–55. Trisler has not done so. Trisler fails to direct the Court to evidence that suggests either Mahon or Schilling knew Trisler required surgery and acted with deliberate indifference to that need or any pain that Trisler may have suffered.

Trisler also fails to demonstrate that Defendants Johnson and Jabe bear any responsibility for the allegedly inadequate medical care. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must [demonstrate] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (noting that the doctrine of *respondeat superior* is inapplicable to § 1983 actions). Trisler fails to direct the Court to any admissible evidence which demonstrates Defendant Johnson and Jabe personally denied him appropriate medical care or engaged in conduct that would constitute deliberate indifference. Accordingly, Claims 1(a) and (b) will be dismissed with prejudice.

In Claim 2, Trisler contends that the Correctional Defendants acted with deliberate indifference by contracting with PHS to provide medical care to inmates at Haynesville because they knew that PHS had "a custom, practice, and reputation of employing unqualified and unlicensed persons to provide health care to offenders." (Compl. ¶ 42.) PHS, however, had no involvement in the provision of medical care to inmates at Haynesville during the relevant time period. (Schilling Aff. ¶ 7); *Trisler v. Prison Health*

*Servs., Inc.*, No. 3:11CV343–HEH, 2013 WL 870102, at *2–3 (E.D. Va. Mar. 1, 2013). Moreover, the evidence reflects that, "[t]he VDOC does not allow unlicensed physicians to work in its facilities and treat offenders." (Schilling Aff. ¶ 7.) Accordingly, Claim 2 lacks factual merit and will be dismissed with prejudice.

## B. State Law Claims

Generally, supplementary state law claims should be dismissed if the federal claims are dismissed before trial. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). In light of the preliminary dismissal of Trisler's federal claims, the Court declines to exercise its discretion to retain Trisler's state law claims. *See Jenkins v. Weatherholtz*, 909 F.2d 105, 110 (4th Cir. 1990). Accordingly, Claim 3 will be dismissed without prejudice. Additionally, Claims 4(a)–(e) against the Correctional Defendants and the VDOC will be dismissed without prejudice.[11]

## III. Conclusion

The Motion for Summary Judgment (ECF No. 38) will be granted. The action will be dismissed.

An appropriate Final Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: July 25 2013
Richmond, Virginia

---

[11] The Court's prior dismissal with prejudice of Claims 4(a)–(e) against Defendants Elam, Jenkins, and PHS remains unaffected by the present decision. *Trisler v. Prison Health Servs., Inc.*, No. 3:11CV343–HEH, 2013 WL 870102, at *3 (E.D. Va. Mar. 1, 2013); *Trisler v. Prison Health Servs., Inc.*, No. 3:11CV343–HEH, 2013 WL 775376, at *5–8 (E.D. Va. Feb. 28, 2013).